KEVIN G. LITTLE, SBN 149818
ATTORNEY AT LAW
Post Office Box 8656
Fresno, California 93747
Telephone: (559) 708-4750
Facsimile: (559) 420-0839
Email: kevinglittle@yahoo.com

Attorney for Plaintiff Desiree Martinez

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

\*\*\*

| | |
|---|---|
| DESIREE MARTINEZ,<br><br>        Plaintiff,<br><br>v.<br><br>KYLE PENNINGTON; KIM PENNINGTON; CONNIE PENNINGTON; CHANNON HIGH; THE CITY OF CLOVIS; THE CITY OF SANGER; DOES 1-20,<br><br>        Defendants. | No.<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>42 U.S.C. § 1983<br>   ‣   Equal Protection/Municipal Liability<br>   ‣   Substantive Due Process<br>42 U.S.C. § 1985(2)<br>28 U.S.C. § 2201<br>California Civil Code § 51.7<br>Battery<br>Civil Conspiracy<br>Negligence<br>C.C.P. §§ 526, 1060<br><br>JURY TRIAL DEMANDED |

TO THE HONORABLE COURT:

    Plaintiff Desiree Martinez, through her undersigned counsel, hereby makes the following allegations against the defendants:

<u>JURISDICTION AND VENUE</u>

    1.    This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, as this action is one arising under the federal civil rights laws and

also includes supplemental state law claims.

2.     This Court has venue in this action pursuant to 28 U.S.C. § 1391(b), as the incidents giving rise to this action all occurred within this judicial district.

PARTIES

3.     Plaintiff Desiree Martinez ("Martinez") is a citizen and resident of the United States of America.  Martinez is a single mother of a teenage daughter.

4.     Defendant Kyle Pennington ("K. Pennington") is believed to be a citizen and resident of the State of California.  From 2007 until June of 2013, K. Pennington was an officer with the Clovis Police Department.  K. Pennington is also a military veteran.

5.     Defendant Kim Pennington ("Mr. Pennington") is believed to be a citizen and resident of the State of California, County of Fresno.  Mr. Pennington is K. Pennington's father.  Mr. Pennington has for many years been a peace officer with the Sanger Police Department.

6.     Defendant Connie Pennington ("Mrs. Pennington") is believed to be a citizen and resident of the State of California, County of Fresno.  Mrs. Pennington is K. Pennington's mother.

7.     Channon High ("High") is believed to be a citizen and resident of the State of California, County of Fresno.  High has been employed in the Records Unit of the Clovis Police Department since at least 2012.  At all material times herein, High acted individually and within the course and scope of her employment with the Clovis Police Department.  High is sued in her personal capacity for acts she performed under color of law for the causes of action set forth herein.

8.     Defendant City of Clovis ("Clovis") is local municipal body and a political

subdivision of the State of California.  Clovis is primarily responsible funding and supervising the Clovis Police Department.  As more specifically alleged herein, plaintiff is informed and believes that the customs, policies and practices of Clovis contributed to the constitutional violations alleged herein.

9.    Defendant City of Sanger ("Sanger") is local municipal body and a political subdivision of the State of California.  Sanger is primarily responsible funding and supervising the Sanger Police Department.  As more specifically alleged herein, plaintiff is informed and believes that the customs, policies and practices of Sanger contributed to the constitutional violations alleged herein.

10.    At all material times herein, defendants DOES 1 through 20, whose names and capacities are currently unknown were employed by Clovis or Sanger and acted individually and within the course and scope of their employment, either in a supervisorial or ministerial capacity.  Along with the named defendants, each DOE defendant is responsible in some manner for the injuries and damages alleged herein.  Martinez will amend this Complaint to rename these defendants as soon as their respective names and capacities are ascertained. These fictitious defendants are sued in their personal capacities for acts they performed under color of law, and they are also sued in their personal capacities under state law for the causes of action set forth herein.

<u>FACTUAL ALLEGATIONS</u>

11.    Martinez started dating K. Pennington in February 2013.  At his insistence and due to his trickery, they began living together soon thereafter.  Shortly after they began living together, K. Pennington began the cycle of abuse of Martinez, which included being controlling, isolating Martinez from friends and family, and being critical, intimidating and

temperamental with her. By April 2013, K. Pennington had become violent toward Martinez. The first violent episode occurred when Martinez and K. Pennington were out of town and stayed at a hotel in Dublin, California in April 2013.  K. Pennington attacked and choked Martinez, and then prevented her from either leaving the hotel room or calling for help.  This pattern of violence would escalate over the next several months of their relationship, and included abuse of an emotional, physical and sexual nature.

12.    After the April 2013 abuse and the frequent abuse that followed, K. Pennington would manipulate Martinez in an attempt to dissuade her from leaving him or reporting his abuse.  One tactic K. Pennington used was to appeal to Martinez's sympathy.  K. Pennington would frequently invoke the fact that he was already under investigation by the Clovis Police Department for abusing his prior significant other, K.I., and that he would likely lose his job if Martinez made additional reports.  K. Pennington also would invoke the fact that his military benefits could be at stake if Martinez reported the abuse and he was then prosecuted and convicted.  K. Pennington would alternatively demean Martinez in an attempt to keep her quiet, telling her that he was a peace officer with a graduate degree and that she was nothing by comparison and would not be believed any more than others who had attempted to make reports in the past.  If appeals to Martinez's sympathy or attacks on her self-esteem did not work, K. Pennington would threaten her with further abuse, telling her that he could find her wherever she went, showing her photos he collected of people killed in military action and telling her he could do the same thing to her and her daughter.  As the abuse continued, K. Pennington would attempt to dissuade Martinez by telling her that no one would believe her, since she had not reported or had denied prior incidents of his abuse.  K. Pennington also relied on his superior knowledge of the law to convince Martinez that her various attempts to

1
2
3
4

defend herself were also "abuse" and that any investigation would likely result in their both being arrested.  Finally, K. Pennington would sometimes threaten to harm or kill himself if Martinez reported his abuse.

5
6
7
8
9
10
11
12

13.     Despite the fear and hopelessness that resulted from K. Pennington's abuse and manipulation, and out of sheer necessity to keep her and her daughter safe, Martinez did report several instances of K. Pennington's abuse to law enforcement.  These reports were made either to the Clovis Police Department or the Sanger Police Department.  Unfortunately, due to Clovis' and Sanger's customs, policies and/or practices of insensitivity toward domestic violence victims and lax enforcement of domestic violence laws, most of Martinez's reports were unavailing.  Specifically:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.     On May 2, 2013, Martinez reported Pennington's abuse when he threatened her with harm while she was at her cousin's house.  Officers Kristina Hershberger and Jesus Santillan from the Clovis Police Department responded.  Officer Santillan was personal friends with K. Pennington.  These officers did not separate Martinez and K. Pennington and remove them from each other's sight and earshot, as recommended by California Police Officers Standards and Training (POST).  There was plenty of opportunity to effectively separate Martinez and K. Pennington, but this was not done, although officers are trained as to the potential consequences of requiring a domestic violence victim to give her statement in her abuser's presence.  As a result of these failures, and due to intimidation from K. Pennington, Martinez gave equivocal accounts to Officer Hershberger that permitted her to determine that there was a lack of probable cause.  Instead, Martinez and K. Pennington were left to stay together that evening, and no prior effort was made to propose a cooling off period, make a peaceful conduct order, offer Martinez placement in a women's

shelter, or to search or inquire whether weapons were present in their residence.  Martinez also was not informed of her right under California law to make a private person's arrest.  Martinez also was not informed of her rights to seek emergency or long term restraining orders against K. Pennington.

b.      After Officers Hershberger and Santillan left, Martinez suffered further physical and emotional abuse from K. Pennington.  K. Pennington also outlined a statement for Martinez to recite to the detective that K. Pennington knew from his law enforcement experience would be contacting her to follow up.  Intimidated and injured, Martinez avoided personal contact with the assigned detective, Iri Guerra, and dutifully gave the statement K. Pennington had outlined for her when she had a telephone interview with him on May 3, 2013. Det. Guerra in his interview of Martinez did not advise her citizen arrest or restraining order rights, or of her right under California Penal Code § 679.05(b) to have the support of a domestic violence advocate.

c.      On May 21, 2013, Martinez reported K. Pennington's abuse to another Clovis Police Officer, Gary Taylor, whom she had known before she met K. Pennington. Martinez showed Officer Taylor injuries she had sustained as a result of K. Pennington's abuse.  Officer Taylor did not make a contemporaneous report of the pattern of abuse Martinez recounted to him, although California Penal Code Section 13730(c) requires written incident reports for all domestic violence allegations.  Officer Taylor also did not inform Martinez of her citizen arrest rights or her rights to seek emergency and long term restraining orders.  Indeed, Officer Taylor did not disclose his contact with Martinez until she made a related call to the Clovis Police Department on May 29th.

d.      K. Pennington was advised by another member of the Clovis Police

Department of Martinez's May 21 contact with Officer Taylor the very same day. Confidential reports of domestic violence are not supposed to be disclosed to the potential suspect, since under California Penal Code § 13701(b), the intent of California's domestic violence laws is to "protect victims of domestic violence from continuing abuse." When K. Pennington found out that Martinez has contacted law enforcement, he again physically abused her.

e.      Martinez re-contacted Officer Taylor on May 22, and she showed him the fresh injuries that resulted from K. Pennington's abuse the night before. Again, Officer Taylor did not do an incident report or disclose his contact with Martinez for another week. Officer Taylor again did not advise Martinez of her citizen arrest, restraining order rights, or any other rights that domestic violence victims have.

f.      On May 29, 2013, Martinez made an anonymous call to the Clovis Police Department to report that her boyfriend was abusing her and to seek related legal information. A call for service was generated based on this call. Believing that the call might be assigned to him, Officer Taylor advised his sergeant, Tom Roberts, that he had prior contact with Martinez on May 21 and 22 and therefore had a conflict of interest. It was also disclosed by Officer Taylor that this call for service related to K. Pennington, one of the department's own officers. It does not appear that this call for service was thereafter assigned to any officer; instead, Sgt. Roberts called Martinez and spoke to her briefly while K. Pennington was present with her. Sgt. Roberts also did not advise Martinez of her citizen arrest or restraining order rights, or her right to the support of a domestic violence advocate.

g.      K. Pennington was also contacted by High and told about Martinez's anonymous call. A few days after the incident, K. Pennington received a call from High in Martinez's presence, which he put on speaker to confront Martinez. High told K. Pennington

_____
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF        -7-

that Martinez had called and tried to report abuse by him.  Again, this was highly improper.

h.      As a direct result of High's improper disclosure of Martinez's anonymous call, Martinez suffered one of the worst periods of abuse by K. Pennington, between June 1 and 4, 2013.  K. Pennington by then had moved Martinez from his Clovis residence to his house in Sanger, in an effort to avoid further possible reports to the Clovis Police Department by Martinez.  During that same time period, K. Pennington repeatedly berated, insulted, threatened and intimidated Martinez because of her attempts to report him.  When on June 3, 2013 Martinez attempted to leave the Sanger residence and escape his abuse, K. Pennington attempted to block the door.  When Martinez attempted to call law enforcement, K. Pennington ripped the phone from her hand.  K. Pennington proceeded to choke, beat, drag, and suffocate Martinez, all while he was verbally threatening to harm and kill her.  Later that day, as further punishment, K. Pennington forcibly sodomized, degraded and humiliated Martinez.  K. Pennington also prepared another outline for Martinez to follow in case she was contacted as part of any follow-up investigation.

i.      On the early morning of June 4, 2013, Sanger Police Officers Angela Yambupah and Ralph Salazar and Sgt. Fred Sanders were dispatched to K. Pennington's Sanger residence.  Officers Yambupah and Salazar were dispatched in response to 911 calls from neighbors and passersby who saw the abuse.  Martinez had many obvious injuries from the beating she had sustained.  However, Martinez and K. Pennington were not separated and removed from each other's line of sight and earshot.  As a result, the intimidated Martinez expressed a desire not to "press charges," although she also whispered that K. Pennington abused her and she escaped because she thought he was going to kill her.  Officer Yambupah and Salazar and/or Sgt. Sanders had the authority to arrest K. Pennington, but

they did not, despite the "pro-arrest" policy in domestic violence cases, even in cases that the officers might suspect would ultimately be charged as misdemeanors or might not result in successful prosecution.  Upon leaving, the officers' final comments to Martinez were that the Penningtons were "good people," that K. Pennington was an officer, and his father was a Sanger Police Officer.  Officers Yambupah, Salazar and/or Sgt. Sanders failed to advise Martinez of her citizen arrest and restraining order rights.  Officers Yambupah, Salazar and/or Sgt. Sanders did not ask or make a recommendation regarding Martinez's being taken to a battered women's shelter, and they did not provide her with any materials informing her of her rights as a domestic violence victim under state or federal law.  Officers Yambupah, Salazar and/or Sgt. Sanders failed to make any peaceful conduct orders prior to leaving the premises. Officer Yambupah also failed to complete her report or turn over the photographs she took prior to ending her shift and had to be asked to return to work after her shift to complete her report and produce her photos.  The actions of Officers Yambupah, Salazar and/or Sgt. Sanders in failing to intervene more effectively resulted in Martinez's being beaten and sexually assaulted again on June 4, 2013.

       j.    Martinez managed to alert both the Clovis and Sanger Police Departments about this abuse. Martinez's alerting both agencies and requesting action finally resulted in the issuance of an arrest warrant being issued for K. Pennington on June 5, 2013. A search warrant was also issued for his residence that same day.  K. Pennington was subsequently charged with  violations of California Penal Code §§ 273.5 (domestic violence - June 4, 2013 and May 21, 2013 incidents), 236 (false imprisonment), 245(a)(4) (assault-great bodily injury), 422 (criminal threats), 136.1 (dissuading a witness), and 273.6 (violation of a restraining order).

k.      Even after his June 2013 arrest, K. Pennington continued to abuse Martinez, and Mr. and Mrs. Pennington, through either intentional or negligent conduct, assisted him in concealing his actions.  K. Pennington and his parents began to engage in concerted action intended to conceal the abuse Martinez was suffering and also to enable K. Pennington to continue violating the restraining order that was by then in effect.  It was important for Pennington, although he was the subject of a restraining order, to keep Martinez close so that he could intimidate her from testifying at his upcoming criminal trial.  On multiple occasions in July 2013, K. Pennington physically and sexually abused Martinez.   K. Pennington caused Martinez to nearly overdose on a large dosage of medicine he gave her, and he and Mrs. Pennington opted not to seek medical assistance for the unconscious Martinez for fear of how it might impact K. Pennington's then pending criminal case.  Mr. Pennington, a peace officer and mandated reporter, also concealed the abuse to which Martinez was being subjected and K. Pennington's restraining order violations.  Indeed, on more than one occasion when Martinez was in the car with Mr. Pennington, he made her duck down and hide whenever law enforcement was nearby.  These are hardly the actions of a peace officer trained in domestic violence.

l.      K. Pennington's physical and emotional abuse of Martinez continued in August 2013.  Although Mrs. Pennington had obvious knowledge of this abuse, some of which she witnessed, she did not call the police to advise them what her son had done to Martinez.  Instead, Mrs. Pennington told Martinez that they decided that they "did not need to get the police involved."   Mr. and Mrs. Pennington also intentionally or negligently assisted K. Pennington in violating the restraining order, including assisting K. Pennington move himself and Martinez into another residence in Sanger.  In connection with another episode of abuse

in August 2013, Martinez became so hopeless and despondent that she took a potential overdose of medication.  Before she lapsed into unconsciousness, she thought of her daughter and called for assistance.  This incident resulted in Martinez's being taken in on a 5150 hold.

m.     K. Pennington's abuse of Martinez continued into September 2013.  High and another Clovis Police Department records clerk yet to be identified would alert K. Pennington calls for service by Martinez reporting K. Pennington's violation of the June 2013 restraining order.  K. Pennington abused Martinez when he learned of these incidents, including on September 18, 2013, where he administered her an especially brutal beating that led to his arrest. Prior to submitting to arrest, K. Pennington left with Martinez's daughter and was texting Martinez indicating that he was going to harm either himself and/or Martinez's daughter.  High's betrayal of Martinez's confidentiality as a domestic violence victim was especially heinous, since the violation of a domestic violence restraining order is a "shall arrest" crime due to the recognized threat that a restraining order violator represents.  High's betrayal also had all of the terrible consequences set forth above in this paragraph.

n.     Until September 18, 2013, despite Martinez's numerous reports and the many abuse incidents, Pennington was never arrested for continuing to cohabit with, intimidate, and abuse Martinez  after the June 2013 restraining order was issued.  It was only after his September 18th arrest that was K. Pennington was finally forced to move away from Martinez for the first time since he began abusing her.

o.     By October 2013, Martinez had moved back to Clovis, yet the restrained K. Pennington insisted in harassing and intimidating her in an effort to dissuade her from testifying.  K. Pennington was not alone in these efforts; Mrs. Pennington also would contact

Martinez for the same purpose, and Mr. Pennington, a peace officer and mandated reporter, concealed these damning facts. Some of these unlawful contacts occurred when Martinez was in meetings with the District Attorney's Office prosecuting K. Pennington, yet he was not arrested. Indeed, despite numerous reports to the Clovis Police Department of a "shall arrest" crime, no one at the Clovis Police Department ever arrested K. Pennington for violating the restraining order. Martinez's reports were typically corroborated by text messages, phone records, computer screenshots, etc.

14.     Despite continued harassment from K. Pennington and his family, including their specific requests that she either refuse to testify or testify falsely, the prosecution of K. Pennington was ultimately successful. K. Pennington was held to answer at a December 2013 preliminary hearing, and the charges against him went to trial in April 2014. At that trial, the jury convicted K. Pennington on multiple counts of violating the June 2013 restraining order but hung on the other charges. In July 2014, in order to avoid a retrial, K. Pennington pleaded guilty to one domestic violence charge. Martinez and her daughter also were granted a ten year restraining order as part of K. Pennington's sentencing.

15.     As a result of the foregoing misconduct of the defendants, the physical and emotional injuries to Martinez can hardly be overstated. K. Pennington also made it impossible for Martinez to keep working, thus causing substantial economic losses. Martinez also had to endure the stress of court proceedings, including being dragged through the mud on the witness stand by K. Pennington's ruthless attorney.

16.     Martinez's life has been turned upside down as a result of the defendants' misconduct. Martinez felt compelled to leave the area where she grew up and where her

family and friends are, and she now lives under an alias in a far away confidential location

and receives her mail at yet another location to have it then confidentially forwarded to her.

Martinez lives in constant fear of K. Pennington to this day, and does not feel sufficiently

safe to work or do anything else that would require her to be out alone for any lengthy

period.  Martinez had been diagnosed with post-traumatic stress disorder and will likely

require many more years of treatment.  Martinez is also concerned and distressed about

the damage that has been done to her daughter's mental health as a result of their ordeal.

<u>CLAIMS FOR RELIEF</u>

FIRST CLAIM FOR RELIEF

Equal Protection/Substantive Due Process/Municipal Liability - 42 U.S.C. § 1983
(Against Defendants Clovis and Sanger)

17.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16,

as though fully set forth herein.

18.     At all pertinent times. Martinez had a constitutional right to have police

services administered in a nondiscriminatory manner -- a right that is violated when a state

actor denies such appropriate protection to disfavored persons. *See Navarro v. Block*, 72

F.3d 712, 715-717 (9th Cir.1995); *Estate of Macias v. Ihde*, 1019 F.3d 1019, 1028 (9th Cir.

2000) (recognizing a cause of action under § 1983 based upon the discriminatory denial of

police services to domestic violence victims).  Law enforcement's lax or offensive actions

in handling domestic violence cases are indicative of discriminatory intent.  *See Balistreri*

*v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (officer's misogynist comments

during a domestic violation were proof of discriminatory intent).  As alleged more fully in

the Second Claim for Relief, Martinez also had a substantive due process against being

subjected to state-created danger.

19.     As shown through the allegations set forth above, Clovis and Sanger law enforcement both frequently did not comply with the laws intended to protect domestic violence victims, and this pattern of conduct is sufficient evidence of an illicit custom or practice.  *See Price v. Sery*, 513 F.3d 962, 973-974 (9th Cir. 2008) (evidence of how law enforcement handles calls in practice can overcome evidence of an appropriate written policy).

20.     The Clovis and Sanger officers involved in the foregoing facts all were acting under color of law, and in that capacity they denied Martinez her right to the provision of police services in a non-discriminatory manner.  These customs and practice also resulted in Martinez's being subjected to state-created danger.  These Clovis and Sanger officers were acting in conformity with a widespread custom or practice of failing to provide appropriate and non-discriminatory services to domestic violence victims such as Martinez.   This failure was deliberately indifferent to the obvious risks to a domestic violence victim in coming forward and reporting abuse.  As a direct and proximate result of these the offending customs and practices of Clovis and Sanger, Martinez was damaged as alleged hereinabove.

21.     Accordingly, Clovis and Sanger are responsible for the lax and offensive services provided to Martinez, who is in a class of domestic violence victims who are overwhelmingly female.  Clovis and Sanger are therefore liable for Martinez's damages.

///

///

///

1

SECOND CLAIM FOR RELIEF

2

3

Violation of Substantive Due Process - 42 U.S.C. § 1983)
(Against Defendant High, and DOES 1-20)

4

22.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16,

5

as though fully set forth herein.

6

7

23.    High's above-alleged misconduct resulted in plaintiff's being placed in a

8

worse situation that she otherwise would have been.  While there is no affirmative

9

constitutional duty to protect a citizen from third party violence, when a state actor

10

becomes involved and through her intentional actions worsens the citizen's situation and

11

creates a danger worse or in addition to those faced by the citizen, that state actor has

12

13

violated the citizen's substantive due process rights.  *See Huffman v. County of Los*

14

*Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998).  In alerting a domestic violence suspect of a

15

victim's confidential reports, High was deliberately indifferent to the known risks of placing

16

the abuser in a position to intimidate an unsuspecting victim.  The actions of the

17

responsible DOE defendants also contributed to this violation.

18

19

24.    As a direct and proximate result of High's misconduct, Martinez was

20

damaged as alleged hereinabove.  Martinez was subjected to additional abuse and

21

intimidation because K. Pennington found out about Martinez's reports, and Martinez also

22

23

had to endure the ordeal of K. Pennington's taking her daughter and threatening to harm

24

her.

25

25.    High's aforementioned misconduct was malicious, reckless and/or

26

accomplished with a conscious disregard of plaintiff's rights, thereby entitling her to an

27

award of exemplary and punitive damages according to proof and as permitted by law.

28

_____

THIRD CLAIM FOR RELIEF

Conspiracy to Intimidate State Witness - 42 U.S.C. § 1985(2)
(Against Defendants K. Pennington, Mr. Pennington, and Mrs. Pennington)

26.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

27.     Beginning in June 2013, after K. Pennington's first arrest and the issuance of a restraining order, he and his parents conspired by agreeing to act in concert to conceal his ongoing abuse and also his continual violations of the restraining order.  The disclosure of either one of these facts would have resulted in Pennington's further mandatory arrest and would have disadvantaged him greatly in his ongoing criminal prosecution.  Martinez was the complaining witness in that prosecution, and the Penningtons worked in concert to intimidate and dissuade her from testifying truthfully.  This intimidation took the form of their continuing to subject Martinez to K. Pennington's physical and emotional abuse, communicating with her and directly asking her either not to testify or to testify falsely, and assisting K. Pennington's defense by helping conceal the ongoing abuse to which Martinez was being subjected, thereby making her a less credible witness because there was less corroboration of that abuse for presentation in court.  This concerted action continued all the way through the criminal proceedings.  This concerted action directed at Martinez was related to her status as a victim of domestic violence and a complaining witness in a domestic violence prosecution.  Persons in Martinez's position are overwhelmingly female, and gender is an intermediate suspect classification.

28.     The second clause of 42 U.S.C. § 1985(2), relating to state proceedings, broadly prohibits conspiracies to impede, hinder, obstruct or defeat the due course of justice in any State or Territory, when such action is intended to deny a citizen in an

invidious classification the equal protection of the laws.  *See Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1355 (9th Cir. 1981).

29.    As a direct and proximate result of these defendants' misconduct, Martinez was damaged as alleged hereinabove.

30.    The aforementioned misconduct of the named individual defendants was malicious, reckless and/or accomplished with a conscious disregard of Martinez's rights, thereby entitling her to an award of exemplary and punitive damages according to proof and as permitted by law.

FOURTH CLAIM FOR RELIEF

28 U.S.C. § 2201- Declaratory Relief<br>(Against Defendants Clovis and Sanger)

31.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

32.    The foregoing factual allegations set forth an actual controversy with respect to whether Martinez's constitutional equal protection and substantive due process rights were violated. Therefore, this proceeding is an appropriate one for declaratory relief under 28 U.S.C. § 2201.

33.    Because of the irreparable harm she continues to face, Martinez requests a lifetime injunction against K. Pennington and his family.  The current injunction is only for ten years and only extends to K. Pennington.

34.    Martinez also requests further necessary and proper relief as provided for under  28 U.S.C. § 2202, as may be determined by the Court.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM FOR RELIEF

### Civil Code § 51.7 - Ralph Act
### (Against Defendant K. Pennington)

35.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

36.     K. Pennington threatened and/or committed violent acts against Martinez on an ongoing basis beginning in May 2013.

37.     A motivating reason for K. Pennington's conduct was Martinez's status as a victim of domestic violence and a complaining witness in a domestic violence prosecution. Persons in Martinez's position are overwhelmingly female, and gender is an intermediate suspect classification.

38.     Martinez was harmed, as set forth above.  K. Pennington's actions were a substantial factor in causing that harm.

## SIXTH CLAIM FOR RELIEF
### Battery

### (Against Defendant K. Pennington)

39.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

40.     K. Pennington's above-alleged misconduct resulted in Martinez's being subjected to offensive and harmful contact against her will, in violation of her California state law rights to be free from battery and physical harm.

41.     As a direct and proximate result of K. Pennington's misconduct, Martinez was damaged as alleged hereinabove.

42.     The aforementioned misconduct of by K. Pennington was malicious, reckless

and/or accomplished with a conscious disregard of Martinez's rights, thereby entitling her to an award of exemplary and punitive damages according to proof and as permitted by law.

SEVENTH CLAIM FOR RELIEF

Civil Conspiracy to Commit Ralph Act Violations and Battery

(Against Defendants K. Pennington, Mr. Pennington, and Mrs. Pennington)

43.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

44.    Beginning in June 2013, after K. Pennington's first arrest and the issuance of a restraining order, he and his parents conspired by agreeing to act in concert to conceal his ongoing abuse and also his continual violations of the restraining order.  The disclosure of either one of these facts would have resulted in Pennington's further mandatory arrest and would have disadvantaged him greatly in his ongoing criminal prosecution.  Martinez was the complaining witness in that prosecution, and the Penningtons worked in concert to intimidate and dissuade her from testifying truthfully. This intimidation took the form of their continuing to subject Martinez to K. Pennington's physical and emotional abuse, communicating with her and directly asking her either not to testify or to testify falsely, and assisting K. Pennington's defense by helping conceal the ongoing abuse to which Martinez was being subjected, thereby making her a less credible witness because there was less corroboration of that abuse for presentation in court.  This concerted action continued all the way through the criminal proceedings.  This concerted action directed at Martinez was related to her status as a victim of domestic violence and a complaining witness in a domestic violence prosecution.  Persons in Martinez's position

are overwhelmingly female, and gender is an intermediate suspect classification.

45.    All of the Pennington's were aware of the wrongful course of action against Martinez.

46.    The Pennington's acted in concert and collectively and mutually intended that the battery and intimidation of Martinez continue and be concealed.

47.    As a direct and proximate result of the Penningtons' misconduct, Martinez was damaged as alleged hereinabove.

48.    The aforementioned misconduct of by the Penningtons was malicious, reckless and/or accomplished with a conscious disregard of Martinez's rights, thereby entitling her to an award of exemplary and punitive damages according to proof and as permitted by law.

EIGHTH CLAIM FOR RELIEF

Negligence
(Against Mr. and Mrs. Pennington)

49.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

50.    The defendants each have a duty to care for persons staying on or using their property in a non-negligent manner, and, by committing the misconduct alleged above, Mr. and Mrs. Pennington each breached that duty.  Specifically, the individual defendants were, at minimum, negligent in permitting K. Pennington to commit ongoing abuse against Martinez once she moved to Pennington family properties in Sanger.  Mr. Pennington also had a duty as a mandated reporter of domestic violence to disclosure the ongoing abuse and intimidation of which he was aware.

51.    Mr. and Mrs. Pennington's above-alleged misconduct resulted in plaintiff's

being damaged as alleged hereinabove.

## NINTH CLAIM FOR RELIEF

Injunctive and Declaratory Relief - Code of Civil Procedure § 526, 1060
(Against All Defendants)

52.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 16, as though fully set forth herein.

53.     The defendants' above-alleged misconduct, resulted in Martinez's being subjected to misconduct that violated both federal and state law, and which resulted in tremendous harm to Martinez.

54.     Because of the irreparable harm she continues to face, Martinez requests a lifetime injunction against K. Pennington and his family.  The current injunction is only for ten years and only extends to K. Pennington.

55.     Plaintiff also requests further necessary and proper relief as provided for under Code of Civil Procedure §§ 526 and 1060 and is entitled to attorney's fees under Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     For compensatory, general and special damages against each defendant in an amount proven at trial;

2.     For punitive and exemplary damages against each named individual defendants, in an amount appropriate to punish them and deter others from engaging in similar misconduct;

3.     For statutory damages and penalties;

4.     For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and as

otherwise authorized by statute or law;

5.      For such other relief, including the above-requested injunctive and declaratory relief, as the Court may deem proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands trial by jury as to all her claims for relief seeking legal remedies.

Dated: May 1, 2015

_____
Kevin G. Little
Attorney for Plaintiff Desiree Martinez