UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE MARTINEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>KYLE PENNINGTON; KIM PENNINGTON; CONNIE PENNINGTON; KRISTINA HERSHBERGER; JESUS SANTILLAN; CHANNON HIGH; THE CITY OF CLOVIS; ANGELA YAMBUPAH; RALPH SALAZAR; FRED SANDERS; THE CITY OF SANGER; AND DOES 1 through 20,<br><br>    Defendants. | No.  1:15-cv-00683-JAM-MJS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS', THE CITY OF CLOVIS, THE CITY OF SANGER, KRISTINA HERSHBERGER, JESUS SANTILLAN, CHANNON HIGH, ANGELA YAMBUPAH, RALPH SALAZAR, AND FRED SANDERS, MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, FOURTH AND ELEVENTH CLAIMS FOR RELIEF IN THE FIRST AMENDED COMPLAINT** |

Plaintiff Desiree Martinez ("Plaintiff") brought this lawsuit against eleven defendants. Eight of the eleven defendants have filed this motion to dismiss four of the claims for relief in Plaintiff's first amended complaint ("FAC") (Doc. #16).[1] Plaintiff opposed the motion (Doc. #36).

Defendants Kyle Pennington ("KP"), Kim Pennington ("Mr. Pennington"), and Connie Pennington ("Mrs. Pennington") did not

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).  The hearing was scheduled for December 2, 2015.

1

join in this motion to dismiss, nor did any of the Pennington defendants file their own motions to dismiss. Thus, this order addresses only the four claims brought against defendants the City of Clovis ("Clovis"), the City of Sanger ("Sanger"), Kristina Hershberger ("Hershberger"), Jesus Santillan ("Santillan"), Channon High ("High"), Angela Yambupah ("Yambupah"), Ralph Salazar ("Salazar"), and Fred Sanders ("Sanders").

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff began a relationship with KP, an officer with the Clovis Police Department ("CPD"), in February 2013. FAC ¶ 16. KP and Plaintiff began living together soon after they started dating. Id. In April of the same year, KP allegedly physically attacked Plaintiff for the first time by choking her in a hotel room. Id. Plaintiff alleges that on May 2, 2013, KP threatened to harm Plaintiff again, so Plaintiff contacted the CPD. Id. ¶ 18(a). Plaintiff alleges that KP "was already under investigation by the [CPD] for abusing his prior significant other." Id. ¶ 17.

Defendants Hershberger and Santillan, both of whom were officers with the CPD, responded to Plaintiff's call. Id. Plaintiff alleges that Hershberger and Santillan did not separate KP and Plaintiff before asking Plaintiff about the alleged threats. Id. Hershberger asked Plaintiff questions, but Plaintiff gave "equivocal accounts" of the incident. Id. Plaintiff alleges that she gave Hershberger an "equivocal account[]" of what happened because Plaintiff was intimidated by

2

KP's presence. Id. Hershberger determined that the officers lacked probable cause to arrest KP. Id. Plaintiff alleges that Hershberger and Santillan did not tell Plaintiff about a right to make a private person's arrest or to seek a long term restraining order. Id. Plaintiff alleges that KP physically and emotionally abused Plaintiff after Hershberger and Santillan left. Id. ¶ 18(b).

Less than three weeks later, Plaintiff contacted Officer Gary Taylor ("Taylor") of the CPD. Id. ¶ 18(c). Plaintiff told Taylor that KP was abusing her and showed Taylor her injuries. Id. Plaintiff alleges that Taylor did not tell Plaintiff about citizen's arrests or emergency or long-term restraining orders. Id. Eight days after Plaintiff's call to Taylor, Plaintiff called the CPD anonymously. Id. ¶ 18(f). Sergeant Tom Roberts ("Roberts") returned Plaintiff's call and interviewed her, allegedly while KP was with Plaintiff. Id. Plaintiff alleges that Roberts did not tell Plaintiff about her rights to a citizen's arrest, restraining orders, or a domestic violence advocate. Id.

A few days after Plaintiff's anonymous call to the CPD, Plaintiff alleges that defendant High called and informed KP that Plaintiff had called the CPD to report abuse by KP. Id. ¶ 18(g). Plaintiff alleges that because of High's call to KP, KP severely abused Plaintiff from June 1 to June 4 of 2013. Id. ¶ 18(h).

Sometime between February and June 2013, Plaintiff alleges that she and KP moved from Clovis to Sanger. Id. On June 4, 2013, at least one of Plaintiff and KP's neighbors allegedly called 911 to report that KP was abusing Plaintiff. Id. ¶ 18(i).

1  Defendants Yambupah and Salazar, both officers for the Sanger
2  Police Department ("SPD"), were dispatched to KP and Plaintiff's
3  home in response to the 911 calls.  Id.  Plaintiff alleges that
4  she had "many obvious injuries."  Id.  Yambupah and Salazar
5  allegedly did not separate Plaintiff from KP to question her
6  about the abuse.  Id.  Plaintiff alleges that as a result of not
7  being separated from KP, she felt intimidated and indicated that
8  she did not want to press charges.  Id.  Yambupah and Salazar
9  left without arresting KP.  Id.  Plaintiff also alleges that
10 Yambupah and Salazar did not tell Plaintiff about her rights to a
11 citizen's arrest and a restraining order.  Id.  KP allegedly beat
12 and sexually assaulted Plaintiff later that night.  Id.
13 Plaintiff contacted both the CPD and SPD.  Id. ¶ 18(j).  An
14 arrest warrant and a restraining order were issued against KP on
15 June 5, 2013.  Id. ¶ 18(j), 18(m).

16      After his June arrest, KP continued to live with Plaintiff,
17 even though there was a restraining order requiring KP to stay
18 away from Plaintiff.  Id. ¶ 18(n).  Between June and August 2013,
19 KP allegedly continued to physically, sexually, and emotionally
20 abuse Plaintiff.  Id. ¶ 18(k)-(l).  Plaintiff alleges that she
21 reported KP's violations of the restraining order to the CPD.
22 Id. ¶ 18(m).  High and another unidentified records clerk for the
23 CPD allegedly would alert KP whenever Plaintiff called the CPD.
24 Id.  Plaintiff alleges that when KP found out about Plaintiff's
25 calls to the CPD, KP would physically abuse Plaintiff.  Id.  From
26 June through the beginning of September 2013, KP was never
27 arrested for violating the restraining order or abusing
28 Plaintiff.  Id. ¶ 18(n).

4

1    KP was arrested on September 18, 2013, allegedly for
2 brutally beating Plaintiff. Id. ¶ 18(m). KP was forced to move
3 away from Plaintiff, and Plaintiff moved from Sanger to Clovis
4 around October 2013. Id. ¶ 18(n)-(o). KP allegedly continued to
5 contact Plaintiff in violation of the restraining order. Id.
6 ¶ 18(o). Plaintiff alleges that numerous reports were made to
7 the CPD about KP's violation of the restraining order, but KP was
8 never arrested for violating the restraining order. Id.
9    KP was eventually charged with several violations of the
10 California Penal Code relating to domestic violence, threats,
11 false imprisonment, violating a restraining order, and more. Id.
12 ¶ 18(j). A jury convicted KP on multiple counts of violating the
13 restraining order, but hung on the other charges. Id. ¶ 19. KP
14 pled guilty to one domestic violence charge to avoid a retrial.
15 Id.
16    Plaintiff filed suit against defendants KP, Mr. Pennington,
17 Mrs. Pennington, High, Clovis, and Sanger on May 1, 2015 (Doc.
18 #1). Plaintiff amended her complaint and added defendants
19 Hershberger, Santillan, Yambupah, Salazar, and Sanders two weeks
20 later (Doc. #6). Defendants Clovis, Sanger, High, Hershberger,
21 Santillan, Yambupah, Salazar, and Sanders moved to dismiss each
22 cause of action asserted against them (Doc. #16).
23
24              II.   OPINION
25    As noted above, Plaintiff brings eleven causes of action in
26 her FAC. FAC at 15-24. Plaintiff's third and fifth through
27 tenth claims for relief are brought only against defendants that
28 did not join in this motion to dismiss. Id. at 18, 20-24.

5

Thus, only Plaintiff's first, second, fourth, and eleventh claims for relief are at issue in this motion to dismiss.

    A.    Plaintiff's First Claim For Relief

Plaintiff brings her first claim for relief against the cities of Clovis and Sanger under theories of municipal liability pursuant to 42 U.S.C. § 1983. Id. at 15. Plaintiff alleges two causes of action under her first claim for relief: 1) violation of Plaintiff's substantive due process rights and 2) violation of Plaintiff's right to equal protection under the law. Id. To survive a motion to dismiss on Plaintiff's due process and equal protection claims against the cities, Plaintiff must allege facts sufficient to show that the cities had a custom or policy that inflicted the constitutional injury. Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694 (1978). A "policy or custom" under Monell is a "longstanding practice . . . which constitutes the standard operating procedure of the local government entity." Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002). "[T]he complaint must allege the policy, as well as its causal relationship to the constitutional injury, in sufficient detail." Hass v. Sacramento Cty. Sheriff's Dept., 2014 WL 1616440, at *5 (E.D. Cal Apr. 18, 2014).

        1.    Plaintiff's Due Process claims against Clovis and Sanger

Plaintiff alleges that the CPD and the SPD had "customs, policies, and/or practices of insensitivity toward domestic violence victims and lax enforcement of domestic violence laws." FAC ¶ 18. Plaintiff also alleges that both the CPD and the SPD "frequently did not comply with the laws intended to protect

domestic violence victims." Id. ¶ 24.  Plaintiff also alleges that the CPD and SPD officers' "fail[ure] to provide [Plaintiff] with the services that she was entitled to as a victim of domestic violence . . . directly resulted in additional harm to [Plaintiff]." Id. ¶ 18.

In general, government actors have no obligation to protect individual citizens from harm. DeShaney v. Winnebago Cty. Dept. of Soc. Servs., 489 U.S. 189, 195-96 (1989). The government, however, may be liable for violating an individual's substantive due process rights if a government actor places the individual in a worse position than she would have been without the government action. See id. at 201.

Plaintiff alleges that Clovis' custom of lax enforcement of domestic violence laws placed Plaintiff "in a worse situation than she otherwise would have been." Id. ¶ 23. Plaintiff provides at least three examples of how her situation became worse after her interactions with law enforcement. First, she alleges that after her interaction with Hershberger and Santillan on May 2, 2013 ended, Plaintiff "suffered further physical and emotional abuse from [KP]." Id. ¶ 18(b). Second, Plaintiff alleges that on May 21, 2013, KP "was advised by another member of the [CPD]" that Plaintiff had contacted the CPD that day. Id. ¶ 18(d). Plaintiff alleges that "[w]hen [KP] found out that [Plaintiff] ha[d] contacted law enforcement, he again physically abused her." Id. Plaintiff alleges that she showed a CPD officer her "fresh injuries that resulted from [KP's] abuse" on the following day. Id. ¶ 18(e). Finally, Plaintiff alleges that "[a]s a direct result of High's improper disclosure of

7

[Plaintiff's] [May 29, 2013] anonymous call, [Plaintiff] suffered one of the worse periods of abuse by [KP]." Id. ¶ 18(h). Plaintiff suggests that if CPD officers had handled her allegations against KP properly, KP would not have been able to continually abuse Plaintiff. See id. ¶ 23-25.

Plaintiff also supports her allegations of an impermissible policy or practice against the CPD with factual examples. Plaintiff alleges at least five interactions with officers of the CPD who did not inform Plaintiff of her rights as a domestic violence victim. Id. ¶ 18(a)-(g). Plaintiff also alleges at least three instances where officers of the CPD did not separate Plaintiff and KP when asking Plaintiff about the alleged abuse. Id. ¶ 18(a)-(b), (f)-(g). All of these factual allegations, when taken as true, show a pattern of lax enforcement in domestic violence cases by the CPD.

Defendants argue that Plaintiff fails to allege facts sufficient to support a theory of Monell liability. Mot. at 5-6. They argue that Plaintiff sets forth only conclusory allegations against Clovis and Sanger. Mot. at 6. Defendants' argument that the allegations against Clovis are conclusory and insufficient to survive a motion to dismiss is unpersuasive. Plaintiff supports her allegations against Clovis with several factual examples. Against Sanger, however, Plaintiff alleges only one instance of interaction with the SPD. See FAC ¶ 18(i). This single instance is not enough to allege a policy of lax domestic violence enforcement. Plaintiff can proceed under Monell liability against Clovis for violation of her due process rights, because the facts, taken as true, support Plaintiff's allegation of an

8

improper policy that led to her suffering more abuse than she would have without interacting with the officers. Plaintiff does not, however, plead facts to support that Sanger had an impermissible policy that violated Plaintiff's due process rights. Therefore, Plaintiff's due process cause of action against the city of Sanger is dismissed with leave to amend.

### 2. Plaintiff's Equal Protection Claims Against the Cities

The equal protection clause of the Fourteenth Amendment requires government actors to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, a plaintiff alleging a violation of equal protection must allege that she was treated differently from others in a similar position.

Plaintiff alleges that Clovis and Sanger violated her "constitutional right to have police services administered in a nondiscriminatory manner." FAC ¶ 23. Plaintiff alleges that the CPD and SPD each had a "widespread custom or practice of failing to provide appropriate and non-discriminatory services to domestic violence victims." Id. ¶ 25. Plaintiff also states that she is in a "class of domestic violence victims who are overwhelmingly female." Id. ¶ 26. Other courts have allowed plaintiffs to proceed on the theory that a municipality violated equal protection by not treating domestic violence victims the same as victims of other types of abuse. See e.g. Thurman v. City of Torrington, 595 F. Supp. 1521 (D. Conn. 1984); Dudosh v. City of Allentown, 722 F. Supp. 1233 (E.D. Pa. 1989). Here, however, Plaintiff does not provide enough facts to support her

9

claim that she as a victim of domestic violence was treated any differently by the CPD or SPD from victims of other crimes. Plaintiff's equal protection claim against Sanger and Clovis are dismissed with leave to amend.

### B. Plaintiff's Second Claim for Relief

Plaintiff's second claim for relief is actually two causes of action brought against several defendants. Plaintiff brings equal protection claims and due process claims against Hershberger, Santillan, High, Yambupah, Salazar, and Sanders. FAC at 16.

Defendants argue that the statute of limitations applicable to § 1983 claims bars Plaintiff's claims against Hershberger and Santillan. Mot. at 12. Defendants erroneously state that Plaintiff's complaint was filed on May 4, 2015, which is more than two years after Plaintiff's May 2, 2013 interaction with Hershberger and Santillan. Mot. at 12. But Plaintiff filed her complaint on May 1, 2015 (see Doc. #1). Thus, Plaintiff's claims against Hershberger and Santillan are not time-barred.

#### 1. Plaintiff's Due Process Claims Against Individual Defendants

Plaintiff brings her due process claims against the officers under the "state-created danger" doctrine. FAC ¶ 28. Typically, state actors do not have an affirmative duty to protect individuals from danger. DeShaney v. Winnebago Cnty Dept. of Soc. Servs., 489 U.S. 189, 196 (1989). A state actor may be required to protect an individual if the "state official participated in creating a dangerous situation and acted with deliberate indifference to the known or obvious danger in

subjecting the plaintiff to it." L.W. v. Grubbs, 92 F.3d 894, 896 (9th Cir. 1996).

Plaintiff alleges that defendants Hershberger, Santillan, Yambupah, Salazar, and Sanders responded to Plaintiff's calls to the SPD and CPD for alleged domestic violence "without providing her with the benefits to which she was entitled as a domestic violence victim and thereby exposed her to even greater danger than if they had never responded at all." FAC ¶ 39. Defendants argue that while they did not necessarily exemplify perfect performance, their failure to inform Plaintiff about her rights as a domestic violence victim did not amount to a constitutional violation. Mot. at 10-11.

Taking Plaintiff's allegations as true, Plaintiff suffered more abuse by KP than she would have if the officers from the CPD and SPD had not shown up at all. See infra Part II(A). As to defendants Hershberger and Santillan, Plaintiff alleges that their "failure to provide [Plaintiff] with the services she was entitled to as a victim of domestic violence" led to Plaintiff "suffer[ing] further physical and emotional abuse from [KP]." FAC ¶ 18(b). As to defendants Yambupah, Salazar, and Sanders, Plaintiff alleges that their failure to arrest KP or provide Plaintiff with resources afforded to domestic violence victims on the morning on June 4, 2013 "resulted in [Plaintiff] being beaten and sexually assaulted again" later that day. Id. ¶ 18(i). As to defendant High, Plaintiff alleges that High's actions placed Plaintiff in danger of abuse that she would not have suffered had High not told KP about Plaintiff's calls to the CPD. Id. ¶ 18(h). These facts sufficiently allege that each of the

11

individually named defendants violated Plaintiff's due process rights by putting her in greater danger than she would have been without the state action.  Thus, the Court denies defendants' motion to dismiss the due process claims against the named individual defendants.

### 2. Plaintiff's Equal Protection Claims Against Individual Defendants

As discussed above with respect to Plaintiff's equal protection claims against Clovis and Sanger, Plaintiff does not allege any facts which support a claim that she was treated differently from any others similarly situated.  Therefore, Plaintiff's equal protection claims against the individual defendants are dismissed with leave to amend.

### C. Plaintiff's Fourth Cause of Action

Plaintiff brings her fourth cause of action against Clovis and Sanger under 28 U.S.C. § 2201, which authorizes a district court to grant declaratory relief. FAC at 19.  Plaintiff seeks a declaration that her equal protection and substantive due process rights were violated.  Id. ¶ 37.  This claim duplicates Plaintiff's equal protection and due process causes of action. Plaintiff need only ask for declaratory relief in her prayer for relief, rather than pleading it as a separate cause of action. As such, Plaintiff's fourth claim for relief is dismissed without prejudice as to each of the defendants who brought this motion to dismiss.

### D. Plaintiff's Eleventh Cause of Action

Plaintiff's brings her eleventh claim for injunctive and declaratory relief against all defendants under California Code

of Civil Procedure §§ 526, 1060. FAC at 24. Plaintiff seeks a lifetime injunction against KP, Mr. Pennington, and Mrs. Pennington. FAC ¶ 67. Plaintiff does not explain how her request for injunctive relief against the Penningtons also entitles her to injunctive relief against Clovis, Sanger, and the individual defendants who were employed by the CPD and SPD. As such, Plaintiff's eleventh claim for relief is dismissed against all the moving defendants herein with leave to amend.

### E.  Plaintiff's Request For Punitive Damages

Plaintiff requests punitive damages against only "each named individual defendant[]." FAC at 25. Plaintiff cannot (and does not) seek punitive damages against Clovis or Sanger, because a municipality is immune from punitive damages under § 1983. Newport v. Fact Concerts, Inc., 45 U.S. 247, 271 (1981).

Conversely, an individual defendant can be liable for punitive damages under § 1983 "when [the] defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff has not alleged that any defendants acted with "evil motive or intent," but she has alleged and provided facts to support allegations that the individual defendants acted with "reckless or callous indifference" to her rights. See infra Part II(B)(1). As such, the Court denies the moving defendants' motion to dismiss Plaintiff's request for punitive damages against the individual defendants from the FAC.

13

III. ORDER

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss. The Court dismisses without prejudice: 1) the first claim for relief against Sanger for due process violations, 2) the first claims for relief against Clovis and Sanger for equal protection violations, 3) the second claims for relief against Hershberger, Santillan, High, Yambupah, Salazar, and Sanders for equal protection violations, 4) Plaintiff's fourth cause of action against all defendants who brought this motion, and 5) Plaintiff's eleventh cause of action against all defendants who brought this motion. The Court denies the defendants' motion to dismiss Plaintiff's claims for due process violations against Clovis and the individual defendants and denies the motion to dismiss Plaintiff's request for punitive damages.

If Plaintiff elects to amend any of the claims dismissed herein, she shall file her Second Amended Complaint within twenty days of the date of this Order. Defendants shall file their responsive pleadings within twenty days thereafter. If Plaintiff elects not to file an amended complaint, this case shall proceed on the remaining claims in the FAC and Defendants shall file their Answers to the FAC within thirty days from the date of this Order.

IT IS SO ORDERED.

Dated: January 5, 2016

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE